This is an appeal from an order granting motions for summary judgment in favor of Dr. David Davis and the Bay Minette Infirmary in a medical malpractice wrongful death case.
At 11:05 p.m. on September 10, 1982, Ronald Stewart was admitted to the emergency room of the Bay Minette Infirmary. Stewart complained that he had hurt his back while picking up a sofa that morning. He was treated by Dr. Davis, whom he told that he had taken 6 Valium 5 mg. capsules and had drunk three mixed alcoholic drinks. The emergency room record shows that Stewart's vital signs were: blood pressure, 158/110; temperature, 98°; pulse, 108; and respiration, 20. Dr. Davis stated in his affidavit:
 "While these vital signs are slightly above normal, excluding the temperature, they were not dramatically abnormal. I cautioned the patient at length about the dangers of mixing valium and alcohol. I gave him a shot of stimulant and a prescription for a pain killer and a muscle relaxer. The patient left the emergency room at approximately 11:30 p.m. and returned dead on arrival at 4:30 a.m."
Dr. Davis concluded that he was not negligent in his treatment of Stewart and that he did not deviate from the standard of care of other physicians similarly situated.
The record shows that Stewart was administered 30 milligrams of Talwin and 25 milligrams of Phenergan at 11:25 p.m., and an unspecified amount of caffeine benzoate sodium at 11:30 p.m. The prescriptions were for Tylox and Flexaril.
An autopsy was performed and a report was prepared by Drs. Gary D. Cumberland and LeRoy Riddick, pathologists with the Alabama Department of Forensic Sciences. Dr. Cumberland wrote a letter to the district attorney which included the following:
 "The necropsy examination failed to reveal the cause of death. Toxicology studies revealed levels for all three drugs (valium, talwin and ethanol) in his blood, but not to a level sufficient to normally result in death.
 "A possible explanation is an idiosyncratic reaction to the drugs singularly or in combination, but this is impossible to prove. As a result, in my opinion, the manner of death in this case should remain undetermined."
We note that the autopsy report itself contains the following:
 "CAUSE OF DEATH: Blood positive for ethyl alcohol, 0.11%, pentazocine [Talwin,] 0.17 ug/ml, diazepam [Valium], 1.0 ug/ml and nordiazepam [a metabolite of Valium], 0.4 ug/ml.
"MANNER OF DEATH: Undetermined."
We make no judgment at this stage regarding this discrepancy between "cause of death" and "manner of death."
Stewart's administratrix opposed Dr. Davis's motion for summary judgment with two affidavits from Dr. David Abramson of Washington, D.C. The first reads in pertinent part: *Page 443 
 "I have now had a chance to carefully review the Bay Minette Infirmary records for Ronnie Stewart dated 10 October 1982, the autopsy report by Dr. Cumberland as well as appropriate literature. Based on that review, I have the following understanding and hold the following opinions in this case:
 "Mr. Stewart had taken significant amounts of both alcohol and diazepam when he came to the infirmary complaining of pain in the back.
 "Despite dramatically abnormal vital signs, he was simply given a very potent analgesic drug and sent home. He returned to the hospital 'Dead On Arrival' within five hours of his discharge.
 "It is my very strong opinion that Mr. Stewart's emergency physician demonstrated a nearly cavalier disregard for most basic standards of emergency care. It is virtually certain that standard care would have prevented this untimely death."
Upon objection to the sufficiency of this affidavit, Dr. Abramson submitted a second affidavit which included his curriculum vitae, stated that he had reviewed Dr. Davis's answers to interrogatories, and added to the end of the above-quoted statements, "My opinion is based on my massive experience in primary care medicine and I am convinced that Dr. Davis did not meet the minimum acceptable standards."
In a medical malpractice action, the plaintiff is ordinarily required to produce expert testimony to withstand a summary judgment motion supported by the defendant doctor's affidavit stating that he was not negligent and that his actions did not fall below the standard of care. See Rule 56(e), A.R.Civ.P. If there is a scintilla of evidence of negligence which proximately caused the injury, however, a jury question is presented. Williams v. Bhoopathi, 474 So.2d 690 (Ala. 1985); Orange v. Shannon, 284 Ala. 202, 224 So.2d 236
(1969). Dr. Abramson's affidavits present sufficient evidence of negligence and of proximate cause to make summary judgment improper. Therefore, the trial court erred in granting summary judgment for Dr. Davis.
Bay Minette Infirmary argues that the trial court correctly granted summary judgment in its favor because the only allegations of negligence related to the conduct of Dr. Davis and there was no indication that Dr. Davis was the Infirmary's agent, servant, or employee. The complaint, however, alleged that the Infirmary, by admitting Stewart to its emergency room, "assumed the duty of providing competent and timely medical care," and that Dr. Davis, "as agent and employee of defendant Bay Minette Infirmary, and while acting within the line and scope of his employment with Bay Minette Infirmary," undertook to treat Stewart.
The Infirmary presented the affidavit of its administrator, Gary Farrow. He stated, in part:
 "Dr. Davis was then, and is now, a physician in good standing in the community with full staff privileges at the Bay Minette Infirmary. At all times relevant to this litigation, Dr. Davis has had his own private practice and has not been an agent, servant or employee of the Bay Minette Infirmary. As in other towns like Bay Minette, as a service to the community the physicians on the hospital staff make arrangements to see that a Doctor is available to see patients at the emergency room."
(Emphasis added.)
When asked in interrogatories whether he had ever held a position or office in any hospital, Dr. Davis answered that he had served as chief of staff, assistant chief of staff, and secretary of the Bay Minette Infirmary, but that he could not remember the dates he held any of the offices. He also stated that he had been a staff physician at the Bay Minette Infirmary, with full staff privileges, from 1971 to the present.
A registered nurse who was the emergency room supervisor administered the medications under Dr. Davis's orders. The Infirmary charged Stewart an emergency room fee and charged him for the medications. It also included Dr. Davis's fee on *Page 444 
its emergency room record, although this was not included in the "balance due hospital."
Given the record before us, we cannot say as a matter of law that the evidence adduced in support of and in opposition to the motion for summary judgment does not present a genuine issue of material fact as to the plaintiff's claims against both defendants. Therefore, the trial court erred in granting summary judgment for Bay Minette Infirmary and Dr. Davis.
The motion to dismiss is without merit.
The judgment is reversed and the cause remanded.
MOTION TO DISMISS APPEAL DENIED; REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES, SHORES, ADAMS, BEATTY and STEAGALL, JJ., concur.